IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RODNEY SHOAP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| CITY OF CROSSVILLE, and ) | |
| JESSE KERLEY ) | |
| ) | |
| Defendants. ) | |

# COMPLAINT

Plaintiff, RODNEY SHOAP (herein "Plaintiff"), by and through undersigned counsel, hereby alleges the following claims for violations of the Tennessee Public Protection Act (herein "TPPA"), Tenn. Code Ann. §50–1–304; violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*; violations of the Age Discrimination in Employment of 1968 (herein "ADEA"); violations of the Tennessee Human Rights Act (herein "THRA"), Tenn. Code Ann. § 4–21–101, *et seq.*; Breach of Contract, Slander, and Libel against Defendants, CITY OF CROSSVILLE and JESSE KERLEY, and respectfully states as follows:

## PARTIES

1. Plaintiff, Rodney Shoap, is a citizen and resident of Cumberland County residing at 92 Tomlon Road, Crossville, Tennessee 38555.

2. Defendant, Jesse Kerley, is a citizen and resident of Cumberland County residing at 107 Holiday Court, Crossville, Tennessee 38555. During the period the events at the source of this controversy occurred, Defendant Kerley was a Councilman for the City of Crossville.

1

3. Defendant, City of Crossville (herein the "City"), is a governmental entity in the State of Tennessee with its principal place of business at 392 North Main Street, Crossville, Cumberland County, Tennessee 38555.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over this action on the basis of federal question jurisdiction, pursuant to 28 U.S.C. §1331, as Plaintiff has alleged one or more violations of federal law.

5. The Court also has subject matter jurisdiction over Plaintiff's state-law claims. See 28 U.S.C. § 1367 (supplemental jurisdiction).

6. Venue is proper pursuant to 28 U.S.C. §1391, as Defendants are located in Tennessee and subject to personal jurisdiction in this judicial district.

## STATEMENT OF FACTS

### Background

7. Plaintiff has a long and distinguished professional history in law enforcement.

8. Plaintiff was hired on January 28, 2015 for the position of Interim Police Chief with the Defendant, City of Crossville.

9. The Interim Police Chief is considered an employee of the City.

10. Plaintiff was to serve eighteen (18) months as Interim Police Chief with his term ending July 28, 2016.

11. Plaintiff's duties involved that of a normal permanent Police Chief, as well as the role of training the next generation of department leaders, reorganizing the police department, and creating a succession plan.

## Improper and / or Illegal Demands

12. From the beginning of his employment as Interim Police Chief, Plaintiff was approached by Councilman Jesse Kerley (herein "Councilman Kerley") with a list of improper and / or illegal demands.

13. Plaintiff believed that Kerley could affect Plaintiff's transition from interim police chief to permanent employment as Crossville's police chief.

14. When Plaintiff refused to acquiesce to said demands, Kerley threatened to email Plaintiff's supervisor, Interim City Manager Steve Hill (herein "Hill"), District Attorney General Bryant Dunaway (herein "Dunaway"), and various other city council members, claiming Plaintiff was insubordinate, ill-equipped for the position, and committing felonies.

15. Specifically, Plaintiff avers that the following demands were willfully and improperly made by Councilman Kerley and refused by Plaintiff in his capacity as Interim Police Chief:

    a. Councilman Kerley demanded that Plaintiff investigate Cumberland County Education Director Donald Andrews for the purpose of ultimately charging him with a crime. An investigation of Director Andrews by Plaintiff would have been improper given that the school was out of the City Police's jurisdiction.

    b. On multiple occasions, Councilman Kerley demanded that Plaintiff, without having sufficient evidence or probable cause, file police reports stating that Councilman Pete Souza (herein "Councilman Souza") had assaulted him (Kerley) and then to arrest Councilman Souza for said assault. When Plaintiff refused, Councilman Kerley stated that, by refusing to file his demanded police reports, Plaintiff was committing a felony and contacted District Attorney

General Dunaway in regard to removing Plaintiff from his position as Police Chief and/or bringing charges against him for misconduct.

c. On multiple occasions, Councilman Kerley demanded that Plaintiff, without sufficient evidence or probable cause, arrest James Blankenship (herein "Blankenship"). The first occurrence happened as a result of Blankenship speaking out at a March 2016 council meeting. Blankenship complained to council members that they were not doing their jobs. The following morning, hand-made fliers were distributed to downtown businesses offering a reward for anyone with embarrassing pictures of city officials. While Blankenship was charged with violating the city ordinance of distributing unsigned fliers and given a fine, this was not sufficient for Councilman Kerley. Councilman Kerley demanded that Mr. Blankenship be prosecuted beyond the limits set by law for the offense, including having Blankenship arrested and jailed. On another occasion, Councilman Kerley demanded that Plaintiff arrest Blankenship for allegedly driving without insurance in an unregistered vehicle. Plaintiff, following police department protocol, ran the vehicle's license and registration to found that the vehicle was, in fact, registered and insured. Councilman Kerley then demanded that Blankenship's 92-year-old mother be arrested for allegedly lying to the police.

16. Plaintiff routinely relayed these situations as they arose to his supervisor, City Manager Hill, including his reasons for not complying with Councilman Kerley's demands. To Plaintiff's knowledge, City Manager Hill never addressed any of the incidents with Councilman Kerley.

4

## Offer of Employment

17. Prior to the arrival of Mr. Hill, Mr. David Rutherford (herein "Rutherford") held the position of City Manager. Mr. Rutherford had originally hired Plaintiff for the position of Interim Police Chief.

18. After evaluating Plaintiff's work, City Manager Rutherford decided to hire Plaintiff as the permanent Police Chief with an effective hire date prior to his existing contract with the City terminating.

19. Shortly after offering Plaintiff the position of permanent Police Chief, Mr. Rutherford was dismissed from his position as City Manager.

20. Plaintiff believed, to his detriment, that the employment offer made by Mr. Rutherford on behalf of Defendant City would be honored and City Manager Hill did confirm to Plaintiff that he would be hired for the permanent position. Mr. Hill, however, extended Plaintiff's effective hire date until after elections held in November 2016. By extending Plaintiff's effective hire date months beyond the termination date of his contract with Defendant City, Mr. Hill placed Plaintiff in the untenable position of his employment status with Defendant City being "in limbo" for approximately six months.

## Defamatory Statements

21. Plaintiff avers that Councilman Kerley told reporters that Plaintiff resigned because Plaintiff was being investigated for discrimination.

22. The day after Plaintiff submitted his resignation, Councilman Kerley sent Plaintiff a text message stating that Plaintiff had resigned immediately after learning the city was investigating him for discrimination. Kerley also made this statement in a recording to newspaper reporter, Jim Young (herein "Young"). The statement was then published in

5

Young's story. However, thirty (30) days later, Young was unable to locate the alleged investigation on the internal investigations report and was ultimately told by City Manager Hill that Plaintiff was never investigated for discrimination.

23. Plaintiff avers that Councilman Kerley falsely accused him of misappropriating a Taylor Guitar from the evidence room for his personal use. Kerley accused Plaintiff of this in an email to the Crossville City Council, the Crossville City Attorney, Dunaway, and Governor Haslam.

24. The day after Plaintiff resigned from the police department, Councilman Kerley falsely accused Plaintiff of having an extramarital affair. The accusation was made in a text message and Plaintiff also avers Kerley communicated this same statement to two (2) news reporters, Tony Perry and Young.

**Harassment**

25. During his period of employment with Defendant City, Plaintiff was subjected to legally prohibited verbal and written harassment.

26. By way of example, Plaintiff was repeatedly forced to endure derogatory statements about "old men" made by Councilman Kerley. Plaintiff is over the age of fifty and considers himself to be a senior citizen.

27. By way of a second example, Plaintiff received the following text message from Councilman Kerley in regard to Plaintiff's Christian faith –

> **I would like to thank you for showing me true Christian values. See I have been trying to get things together in my life and get right with God over these last few months. And now with you claiming to be a christian man, you have witnessed to me that I am wasting my time attending church. If you are an example of what God expects us to be then I do not want any part of that. Maybe you will be judged lightly on your deceptions and lies. Thanks again for freeing up my Sundays.**

28. For all the foregoing reasons, Plaintiff was forced to resign his position with Defendant City on June 30, 2016.

29. Plaintiff has actively sought employment in law enforcement since his resignation from Defendant City but, as of the date of his Complaint, remains unemployed.

## CAUSES OF ACTION

### I. VIOLATION OF THE TENNESSEE PUBLIC PROTECTION ACT (TPPA), TENN. CODE ANN. §50–1–304

30. Plaintiff incorporates the paragraphs above as if each has been fully restated herein.

31. The General Assembly adopted a statutory cause of action under the Tennessee Public Protection Act ("TPPA"), commonly referred to as the "Whistleblower Act." See Tenn. Code Ann. §50-1-304(d)(1).

32. Under TPPA, an employee cannot "be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50–1–304(b).

33. To prevail on a whistleblower claim under TPPA, a plaintiff must establish, by a preponderance of the evidence, the following elements:

> (1) his or her status as an employee of the defendant;
>
> (2) his or her refusal to participate in, or to remain silent about, illegal activities;
>
> (3) employer's discharge of the employee; and
>
> (4) exclusive causal relationship between plaintiff's refusal to participate in or remain silent about illegal activities and employer's termination of plaintiff. Boyd v. Edwards & Assocs., Inc., 309 S.W.3d 470, 473 (Tenn. Ct. App. 2009).

7

34. Within the meaning of TPPA, "illegal activities" include "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50–1–304(a)(3).

35. On multiple occasions, Kerley demanded Plaintiff engage in illegal activities, including but not limited to violations of 18 U.S.C. §242, which Plaintiff refused to do.

36. Plaintiff did not remain silent about these incidents and reported each occurrence to his supervisor, City Manager Hill.

37. Section 242 of Title 18 makes it a crime for a person acting under the color of any law to willfully deprive a person of a right or privilege protected by the Constitution of laws of the United States.

38. For the purpose of Section 242, acts under "Color of Law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority.

39. Furthermore, an act is done under "Color of Law" if such acts are done while the official is purporting to act in the performance of his or her official duties.

40. Kerley's demands that Plaintiff participate in or remain silent about illegal activities resulted in the City of Crossville violating 18 U.S.C. §242.

41. Based on this hostile work environment, Plaintiff was forced to resign and such resignation constitutes a discharge within the meaning of the TPPA.

42. When a reasonable person in an employee's position feels compelled to resign due to harsh working conditions, it is simply not a voluntary resignation, but rather a forced one.

43. Here, Plaintiff was subjected to harassment, pervasive discriminatory intimidation, ridicule, and insults which ultimately altered the conditions of his employment so severely that an abusive working environment was created.

44. An exclusive causal relationship existed between Plaintiff's refusal to participate in and remain silent about illegal activities, the subsequent harassment, discrimination, and abuse that commenced, and his ultimate constructive discharge.

## II. VIOLATION TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000E, ET SEQ.

45. Plaintiff incorporates the paragraphs above as if each has been fully restated herein.

46. Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964.

47. Harassment is unwelcomed conduct based on race, color, religion, sex, nation origin, age (40 or older), disability, or genetic information. Harassment becomes unlawful where:

> (1) enduring the offensive conduct becomes a condition of continued employment, or
>
> (2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

48. Plaintiff was repeatedly forced to endure derogatory statements about "old men" by Kerley.

49. These statements continued after Plaintiff repeatedly requested that Kerley refrain from making such statements.

50. Plaintiff is over the age of fifty (50) and considers himself to be a senior citizen.

51. Kerley's conduct was severe and pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

9

### III. VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT OF 1968 (ADEA)

52. Plaintiff incorporates the paragraphs above as if each has been fully restated herein.

53. Harassment is a form of employment discrimination that violates the Age Discrimination in Employment of 1968 (ADEA).

54. Harassment is unwelcomed conduct based on race, color, religion, sex, nation origin, age (40 or older), disability, or genetic information. Harassment becomes unlawful where:

> (1) enduring the offensive conduct becomes a condition of continued employment, or

> (2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

55. Additionally, Title VII prohibits harassment against individuals in retaliation for opposing employment practices that they reasonably believe discriminate against individuals in violation of these laws.

56. Retaliation claims generally follow McDonnell Douglas framework for establishing a prima facie case. There are three essential elements of a retaliation claim:

> (1) opposition to discrimination or participation in covered proceedings;

> (2) adverse action; and

> (3) causal connection between the protected activity and the adverse action.

57. Plaintiff was repeatedly forced to endure derogatory statements about "old men" by Kerley.

58. These statements continued after Plaintiff repeatedly requested that Kerley refrain from making such statements.

59. Plaintiff is over the age of fifty (50) and considers himself to be a senior citizen.

60. Kerley's conduct was severe and pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

61. An exclusive causal connection existed between Plaintiff's requests that statements not be made and the creation of a hostile work environment that lead to Plaintiff's constructive discharge.

## IV. VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT (THRA), TENN. CODE ANN. § 4–21–101, ET SEQ.

62. Plaintiff incorporates the paragraphs above as if each has been fully restated herein.

63. The Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, et seq., is a comprehensive anti-discrimination statute. Phillips v. Interstate Hotels Corp., 974 S.W.2d 680, 683 (Tenn. 1998).

64. This statute was enacted to "[s]afeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment." Tenn. Code. Ann. § 4-21- 101(a)(3).

65. The THRA declares that it is a "discriminatory practice" for an employer to "discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. § 4-21-401(a)(1).

66. The Act also provides that it is a "discriminatory practice" to "[r]etaliate or discriminate in any manner against a person if such person has opposed a practice declared discriminatory by this chapter." Tenn. Code Ann. § 4-21-301(a)(1).

67. It is also "'discriminatory practice' to retaliate or discriminate if a person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter." Tenn. Code Ann. § 4-21-301(a)(1).

68. Plaintiff was subjected to pervasive discriminatory intimidation, ridicule, and insults which altered the conditions of his employment so as to create an abusive working environment.

69. Kerley harassed Plaintiff on numerous occasions. Such harassment included offensive jokes, insults, and put-downs regarding Plaintiff's age and faith/ethical conscious.

70. The objectively offensive conduct of Kerley was reported to Hill on numerous occasions, yet no actions were taken to eliminate such conduct.

71. Additionally, at no time did Hill reasonably try to prevent or promptly correct the harassing behavior.

72. The above-mentioned harassment and hostile work environment led to Plaintiff's constructive discharge.

73. A reasonable person in Plaintiff's position would have felt compelled to resign due to such difficult and unpleasant working conditions. See 42 U.S.C. §2000e, et seq.

74. When an employee is subjected to a hostile work environment and his employer knew or should have known of the harassment but failed to take prompt and appropriate remedial action, the employee shall recover under Title VII. Campbell v. Florida Steel Corp., 919 S.W.2d 26, 29 (Tenn. 1996).

75. There is a causal connection between Plaintiff standing against discriminatory behavior and illegal practices and the adverse actions that followed.

76. Based on the foregoing, the City of Crossville is liable to Plaintiff for the ongoing discriminatory conduct and harassment.

## V. LIBEL

77. Plaintiff incorporates the paragraphs above as if each has been fully restated herein.

78. Libel is the written form of defamation. Davis v. The Tennessean, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).

79. A plaintiff must prove the following elements to establish a prima face case of defamation:

   a. a party published a statement;

   b. with knowledge that the statement is false and defaming to the other; or

   c. with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. Restatement (Second) of Torts § 580B.

80. A statement must be defamatory and false to expose the speaker or writer to liability for defamation. Biltcliffe v. Hailey's Harbor, Inc., 2005 WL 2860164, at *10-11 (Tenn. Ct. App. Oct. 27, 2005). Determining whether a statement is capable of conveying defamatory meaning and whether the statement is false are distinct elements of the tort of defamation and must be considered separately. Id. at *11.

81. A statement or communication is defamatory "if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." Id. at *10-11 (*citing* Restatement (Second) of Torts § 614(1) (1977)).

82. Kerley published various statements including text messages.

83. Kerley made these statements knowing they were false or with reckless disregard as to their falsity.

84. As a result of Kerley's defamatory statements, Plaintiff was and continues to be severely injured.

13

## VI. SLANDER

85. Plaintiff incorporates the paragraphs above as if each has been fully restated herein.

86. Slander is the spoken form of defamation. Davis, 83 S.W.3d at 128.

87. A plaintiff must prove the following elements to establish a prima facie case of defamation:

    a. a party published a statement;

    b. with knowledge that the statement is false and defaming to the other; and

    c. with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. Sullivan v. Baptist Mem'l Hosp., 995 S.W.2s 569, 571 (Tenn. 1999) (*citing* Restatement (Second) of Torts § 580B (1977)).

88. For purposes of defamation, "publication" is defined as the "communication of defamatory matter to a third person." Sullivan, 995 S.W.2d at 571-72.

89. A statement must be defamatory and false to expose the speaker or writer to liability for defamation. Biltcliffe, 2005 WL 2860164, at *10-11. Determining whether a statement is capable of conveying defamatory meaning and whether the statement is false are distinct elements of the tort of defamation and must be considered separately. Id. at *11.

90. A statement or communication is defamatory "if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." Id. at *10-11 (*citing* Restatement (Second) of Tort § 614(1) (1977)).

91. Kerley published various statements, including calls to the District Attorney, conversations with Reporter Young, conversations with other councilmen, and statements to members of the judiciary.

14

92. Kerley made the statements knowing they were false or with reckless disregard as to their falsity.

93. Kerley's statements severely harmed the reputation of Plaintiff and affected Plaintiff's employment with the City.

94. As a result Kerley's statements, Plaintiff was harmed and continues to be harmed.

## VII. FALSE LIGHT INVASION OF PRIVACY

95. Plaintiff incorporates the paragraphs above as if each has been fully restated herein.

96. The Tennessee Supreme Court has adopted the definition of false light invasion of privacy found in § 652E of the Restatement (Second) of Torts:

    "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy if:

    (a) The false light in which the other was placed would be highly offensive to a reasonable person, and

    (b) The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Eisentstien v. WTVF-TV, News Channel 5 Network, LLC, 389 S.W.3d 313, 318 (Tenn. Ct. App. 2012) (*citing* Restatement (Second) of Torts § 652E (1977))."

97. Kerley made several statements, including calls to the District Attorney, filing police reports, statements about Plaintiff's Christian faith, and accusations of Plaintiff having an extra-marital affair.

15

98. These statements placed Plaintiff in a false light that would be highly offensive to a reasonable person.

99. Kerley acted in reckless disregard as to the falsity of the statements he made.

100. As a result of Kerley's reckless acts, Plaintiff standing among his peers, reputation, and career were repeatedly damaged.

## VIII. BREACH OF CONTRACT

101. Plaintiff incorporates the above paragraphs as if each has been fully restated herein.

102. To recover for breach of contract, a plaintiff must prove three elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract. Thornley v. U.S. Bank N.A., 2015 WL 3989380 at *4 (Tenn. Ct. App. 2015) (*quoting* Custom Built Homes v. G.S. Hinson Co., No. 01A01 9511 CV 00512, 1998 WL 960287 at *3 (Tenn. Ct. App. 1998).

103. City Manager Rutherford decided to hire Plaintiff as the City's permanent police chief.

104. Shortly after offering Plaintiff the position of permanent police chief, Mr. Rutherford was dismissed from his position as city manager.

105. Plaintiff believed, to his detriment, that the employment offer made by Mr. Rutherford, on behalf of Defendant City, would be honored and City Manager Hill did confirm that Plaintiff would be hired for the permanent position.

106. Plaintiff and Defendant City entered into a binding agreement.

107. Defendant City's actions amounted to constructive discharge and resulted in Plaintiff not being given the permanent position. Defendant City's actions constituted a breach of contract.

108. As a result of this breach, Plaintiff was and continues to be severely damaged.

16

## DAMAGES

1. As a direct and proximate result of Defendants' actions as described above, Plaintiff has suffered severe economic damage.

2. As a result of Defendants' action, Plaintiff has suffered actual damages in the amount of Two Hundred Thousand ($200,000) Dollars.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

1. That Plaintiff be granted relief sought for each count herein;

2. That proper issue and be served, requiring Defendants to appear in Circuit Court as required by law;

3. For judgment against Defendants for actual damages in the amount of Two Hundred Thousand ($200,000) Dollars.

4. The City of Crossville shall cease and desist from engaging in or facilitating the participation of discriminatory practices as prohibited under Title VII and other applicable U.S. law.

5. The City of Crossville shall halt its employees from operating under the color of law.

6. That Plaintiff be awarded reasonable expenses incurred in this litigation, including reasonable attorney fees;

7. That Defendants be taxed for the fees and costs in this matter;

8. That Plaintiff be allowed to amend this Complaint to include additional counts and damages based upon investigation and discovery; and

9. For such further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ Todd G. Cole_____
**TODD G. COLE, BRP #31078**
**ANDREW T. WOOD, BPR #034494**
COLE LAW GROUP
750 Old Hickory Blvd., Ste. 2-202
Brentwood, TN 37027
Tel: 615-490-6020
Fax: 615-942-5914
tcole@colelawgrouppc.com
*Attorneys for Plaintiff*

18

Case 2:16-cv-00115   Document 1   Filed 12/29/16   Page 18 of 18 PageID #: 18